UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN SNELLINGER

                Plaintiff,

  -against-

FEDERAL NATIONAL MORTGAGE
ASSOCIATION d/b/a FANNIE MAE &
BAYVIEW LOAN SERVICING,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/19/2021

19-cv-6574 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiff John Snellinger ("Plaintiff") commenced this action on or about July 8, 2019 against Defendants Federal National Mortgage Association d/b/a Fannie Mae ("Fannie Mae") and Bayview Loan Servicing ("Bayview") (together, "Defendants") alleging failure to maintain a property in violation of New York's Real Property Action Laws ("RPAPL") and common law negligence. On July 16, 2019, Fannie Mae removed the action to this Court. (ECF No. 5.) Before the Court is (1) Fannie Mae's motion for judgment on the pleadings (ECF No. 22), (2) Bayview's motion to dismiss the Complaint (ECF No. 44), and (3) Plaintiff's cross-motion to amend the Complaint (ECF No. 47).

    For the following reasons the three motions are GRANTED in part and DENIED in part.

## BACKGROUND

    The following facts are taken from the Complaint, dated May 21, 2019, unless otherwise noted. (ECF No. 5-1.)

Plaintiff is a resident of Orange County, New York and is a Town of Wallkill police officer. (*Id.* ¶ 1, 20.) Fannie Mae is a federal corporation licensed to do business in New York as a financial institution by way of providing mortgages to homeowners. (*Id.* ¶ 2-4.) Bayview is a foreign corporation licensed to do business in New York as a financial institution by way of servicing homeowner mortgages. (*Id.* ¶ 7.)

On August 3, 2017, Plaintiff entered the premises of a property located at 24 Drago Lane in Wallkill, New York (the "Property") as part of his official police duties to determine if anyone was located inside the premises prior to it being boarded up. (*Id.* ¶ 20.) Upon arriving, Plaintiff saw a broken window and attempted to enter the premises through the window. (*Id.* ¶ 21.) Plaintiff fell and suffered significant injuries due to the condition of the premises. (*Id.* ¶ 22.) Plaintiff's injuries rendered him sick, sore, lame, disabled, and he still suffers from grave physical injury which prevents him from pursuing his chosen profession.

As of August 3, 2017, Fannie Mae owned, controlled, and/or was responsible for a property located in Wallkill, New York (the "Property"). (*Id.* ¶ 5.) On or before August 3, 2017, Fannie Mae obtained a judgment of foreclosure and sale as to the Property. (*Id.* ¶ 10.) The Property was then sold by way of Memorandum of Sale on May 7, 2017. (*Id.* ¶ 11.) The Deed for the sale was granted on August 30, 2017 and recorded on September 7, 2017. (*Id.*) On or before August 3, 2017, Fannie Mae retained Bayview to manage and/or service the Property. (*Id.* ¶ 5, 8.)

## STANDARDS OF REVIEW

I.     **Motion for Judgment on the Pleadings Under Rule 12(c)**

Under Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "To survive a Rule 12(c) motion, the complaint must contain sufficient

factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir.2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.2006); *see also* Fed. R. Civ. P. 12(b)(6).

II.     **Motion to Dismiss under Rule 12(b)(6)**

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Although for the purpose of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). It is not necessary for the complaint to assert "detailed factual allegations," but must allege "more than labels and conclusions." *Twombly*, 550 U.S at 555. The facts in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*.

III.    **Motion to Amend Under Rule 15(a)(2)**

If a party seeks leave to amend a pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the non[-]movant of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010). "Mere delay, ... absent a showing of bad faith or undue prejudice, does not provide a basis for the

3

district court to deny the right to amend." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (alteration in original). Thus, if the underlying facts and circumstances upon which the moving party relies support the claim or defense sought to be added, the party should generally be allowed to test that claim or defense on the merits. *United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

**I.     RPAPL Claims**

*A.  Section 1307*

Plaintiff seeks to hold Fannie Mae liable for its failure to maintain the Property pursuant to Section 1307 of the RPAPL, which provides that:

> "1. A plaintiff in a mortgage foreclosure action who obtains a judgment of foreclosure and sale . . . involving residential real property . . . that is vacant, or becomes vacant after the issuance of such judgment, or is abandoned by the mortgagor but occupied by a tenant . . . shall maintain such property until such time as ownership has been transferred through the closing of title in foreclosure, or other disposition, and the deed for such property has been duly recorded . . .
>
> 3. The municipality in which such residential real property is located, any tenant lawfully in possession, and a board of managers of a condominium in which the premises are located or a homeowners association if said premises are subject to the rules and regulations of such an association, shall have the right to enforce the obligations described in this section in any court of competent jurisdiction after at least seven days notice to the plaintiff in the foreclosure action unless emergency repairs are required. Any entity acting pursuant to this subdivision shall have a cause of action in any court of competent jurisdiction against the plaintiff in the foreclosure action to recover costs incurred as a result of maintaining the property. . . ."

N.Y. Real Prop. Acts. Law § 1307 (McKinney).

Although the Complaint alleges facts suggesting Fannie Mae may have had an obligation, pursuant to § 1307, to maintain the Property until the Deed for the sale was recorded on September 7, 2017, the Court finds that there is no private right of action under which Plaintiff

4

can recover. The text of § 1307(3) clearly indicates that only (1) the municipality in which the Property in located, (2) any tenant lawfully in possession, (3) a board of managers of a condominium, or (4) a homeowners association "shall have the right to enforce the obligations described in [§ 1703]." § 1703(3). Plaintiff does not plead facts suggesting he falls into any of these categories.

Despite the clear language of § 1703, Plaintiff argues that "[t]he New York State Appellate Courts have already held that personal injury plaintiffs who had been injured at a property as a result of the mortgagee's failure to maintain that property under RPAPL § 1307(1) have a right to bring a private cause of action against the mortgagee bank." (ECF No. 27 at 9.) To support this argument, Plaintiff relies on two cases: *Lezama v. Sedeno*, 119 A.D.3d 479 (1st Dep't 2014) and *Randazzo v. Bank of New York*, 121 A.D.3d 444 (1st Dep't 2014), neither of which are on point. *Lezama* involves a plaintiff tenant in possession and *Randazzo* involves a plaintiff tenant. Both categories of plaintiffs are clearly granted "the right to enforce the obligations" of § 1307. § 1307(3) ("any tenant lawfully in possession . . . shall have the right to enforce the obligations described in this section in any court of competent jurisdiction").

Further, the legislative history of § 1307 supports the understanding that individuals such as Plaintiff do not have a right to sue. Section 1307 was passed by the legislature in 2009, as part of a larger bill containing various mortgage- and housing-related laws. The pertinent part of the New York Senate bill's statement of support reads:

> "A significant issue confronting the State as a result of the spike in foreclosure filings is the maintenance of abandoned property. Homeowners often abandon their homes upon commencement of a foreclosure action, and the property goes into disrepair, serving as an eye sore and nuisance for the rest of the neighborhood. The problem is compounded when multiple homes are foreclosed upon in the same neighborhood. Eventually, these properties may become a haven for crime and drugs, thus decreasing property value in the surrounding areas and beyond.

5

>This bill would require a plaintiff in a foreclosure action, upon the issuance of a judgment of foreclosure and sale pursuant to RPAPL § 1351, to maintain the property. In particular, the bill would require the plaintiff, post-judgment, to keep the property in a manner consistent with the certain provisions of the property maintenance code. If the property is occupied by a tenant, the plaintiff must also maintain the property in a safe and habitable condition. *This provision of the bill may be enforced by the municipality in which the property is located, the tenant occupying the property, or the board of managers or homeowners association, if applicable.*"

New York State Senate Bill S66007 Sponsor Memo, https://www.nysenate.gov/legislation/bills/2009/S66007 (emphasis added).[1]

Further, the purpose of the larger bill is to:

>"(1) allow a larger population of distressed to benefit from consumer protection laws and foreclosure prevention opportunities currently available only to borrowers of 'high-cost,' 'subprime' and 'non-traditional' home loans; (2) establish certain requirements for plaintiffs in foreclosure actions to maintain the foreclosed property; (3) establish protections for tenants residing in foreclosed properties; and (4) strengthen certain consumer protections to prevent distressed homeowners from falling prey to rescue scams."

*Id.*

The statement of support clearly restricts enforcement of § 1307 to an enumerated class of plaintiffs. Further, both the bill's statement of support and purpose demonstrate a desire to protect tenants and the community at large; however, neither address the rights of community members. The Court therefore finds that there is no private right of action under which Plaintiff can recover, as supported by the clear statutory language, prior case law, and the legislative

---

[1] Plaintiff argues that the purpose of § 1307 is "[t]o help *community residents* and municipalitiesthroughout the State better address the growing problem of vacant and abandoned residential properties by creating a statewide registry of such properties and imposing a duty on mortgagees and their loan servicing agents to report these properties to the registry and take earlier (pre-foreclosure) action to identify, secure and maintain them." *See* New York State Assembly Memorandum in Support of Legislation, Bill No. A6932A, https://assembly.state.ny.us/leg/?default_fld=&leg_video=&bn=S04781&term=2015&Summary=Y. (emphasis added) However, this argument is misplaced; Bill No. A6932A is not the bill that resulted in the creation of § 1307 and the memorandum cited to references other statutory changes that created a registry and imposed a reporting requirement. These statutory changes are not indicative of the purpose of § 1307.

history. Accordingly, Fannie Mae's motion for judgment on the pleadings as to Plaintiff's § 1307 claim is granted.[2]

   *B. Section 1308*

Plaintiff seeks to hold Bayview liable for its failure to maintain the Property pursuant to Section 1308 of the RPAPL, which provides that:

> "1. …[W]ithin ninety days of a borrower's delinquency, the servicer authorized to accept payment of the loan shall complete an exterior inspection of the subject property to determine occupancy. Thereafter, throughout the delinquency of the loan, the servicer shall conduct an exterior inspection of the property every twenty-five to thirty-five days, at different times of the day.
>
> 2. If a borrower is delinquent and subject to property inspections pursuant to subdivision one of this section, *the servicer shall secure and maintain the residential real property* pursuant to subdivisions three, four, five, six, and seven of this section where the servicer has a reasonable basis to believe that the residential real property is vacant and abandoned, as defined in section thirteen hundred nine of this chapter, and is not otherwise restricted from accessing the property. . . .
>
> 8. (a) Violations of this section may be heard before a hearing officer or a court of competent jurisdiction. If it shall appear to the satisfaction of the hearing officer or the court, based on the preponderance of the evidence, that the mortgagee or agent of a mortgagee has violated this section, *a civil penalty may be issued by the hearing officer or the court in the amount of up to five hundred dollars per day per property* for each day the violation persisted.
> (b)  The superintendent of financial services may, as appropriate and in his or her sole discretion, pursue any suspected violation of this section.  Before taking such action, the superintendent shall give the lender, assignee or mortgage loan servicer at least seven days' notice of the violation . . . .
> (c)  In addition to the authority granted to the department of financial services, the municipality in which such residential real property is located, shall have the right to enforce the obligations described in this section. . ."

N.Y. Real Prop. Acts. Law § 1308 (emphasis added).

The clear language of § 1308 supports the understanding that while Bayview was obligated to maintain the Property, the right to enforce such obligations is limited to the

---

[2] The Court also notes that Plaintiff failed to provide seven days' notice to Fannie Mae prior to filing its claim as required under § 1307(3).

superintendent of financial services and the municipality in which the Property is located. *Id*. Plaintiff maintains that the legislative purpose of § 1308 is to "*help community residents* and the municipalities throughout the State better address the growing property of vacant and residential properties by . . . *imposing a duty on mortgagees and their loan servicing agents* to report these properties to the registry (ie –statewide registry of abandoned properties) and *take earlier (pre-foreclosure) action to identify, secure and maintain them*." (ECF No. 30 at 11) (quoting New York State Assembly Memorandum in Support of Legislation, Bill No. A06932A, https://assembly.state.ny.us/leg/?default_fld=&leg_video=&bn=A06932&term=2015&Summary =Y&Memo=Y) (emphasis added)). As such, Plaintiff argues § 1308 creates a private right of action for community residents. (ECF No. 30 at 11.) This argument is misguided. The Office of the New York State Comptroller has observed that so-called "zombie properties" are "likely to decay, bring down surrounding property values[,] and attract[] crime," factors that greatly impact a municipality *at large*, and nothing in the legislative history contemplates that § 1308 was written for leverage by any individual community member. In fact, the language "community residents" was used in a description for a larger bill, that added § 1308 among other legislative changes, included the creation of a public registry of abandoned property. In the Justification section, the bill's memo only specifically mentions community residents in its explanation that the registry "will be supplemented by a toll-free hotline that community residents can use to report suspected vacant and abandoned properties." (*Id*.)

>The Justification section also states:
>
>"*Municipalities* are often forced to expend taxpayer funds to prevent a vacant or abandoned property from becoming a public hazard . . . . [Section 1307], enacted in 2009, imposes a duty on plaintiff-mortgagees to maintain vacant residential properties only after a Judgment of Foreclosure and Sale has been entered. Unfortunately, this law has proven inadequate to address the growing number of vacant and abandoned properties falling into disrepair across New York State. A survey in one jurisdiction showed that

> most vacant and abandoned properties were not subject to foreclosure actions and, if they were, the cases had not proceeded to Judgment of Foreclosure and Sale. . . . In response to this growing threat to communities across New York State, the Abandoned Property Neighborhood Relief Act of 2016 will . . . require mortgagees and their loan servicers and agents to identify, secure and maintain vacant and abandoned properties much earlier in the mortgage delinquency timeline."

*Id*. (emphasis added)

The concern of the legislature is clearly municipalities and the financial burden abandoned properties exert on taxpayer funds. Plaintiff also fails to provide any instances where a court found a private right of action under § 1308 for a non-municipality plaintiff. Therefore, following the clear statutory language, the legislative history, and case law, the Court finds that Plaintiff does not have a private right of action under § 1308 against Bayview.[3] Accordingly, Bayview's motion to dismiss as to Plaintiff's § 1308 claim is granted.

## II.     Negligence

Plaintiff brings negligence claims against both Defendants alleging that their negligent care of the Property caused his injuries. Under New York law, which governs Plaintiff's negligence claims, "[t]o establish a *prima facie* case of negligence, a plaintiff must establish the existence of a duty owed by a defendant to the plaintiff, a breach of that duty, and that such breach was a proximate cause of injury to the plaintiff." *S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176, 205 (E.D.N.Y. 2014) (quoting *Nappi v. Inc. Vill. of Lynbrook*, 19 A.D.3d 565, 566 (2d Dep't 2005)).

---

[3] Plaintiff appears to attempt to hold Bayview (the loan servicer) liable under § 1308 and Fannie Mae (mortgagee) liable under § 1307. However, Plaintiff's briefs often intermix the two statutes. To the extent Plaintiff seeks to hold Bayview liable under § 1307, Plaintiff's attempt fails because Bayview was not a "plaintiff in a mortgage foreclosure action who obtain[ed] a judgment of foreclosure and sale." § 1307(1). Similarly, Fannie Mae cannot be held liable under § 1308 because it is not a servicer. § 1308(1).

*A. Fannie Mae*

Generally speaking, "out-of-possession mortgage holders who neither maintained nor controlled the premises where plaintiff's alleged accident occurred" cannot be held responsible for common law negligent failure to maintain the premises. *Moran v. Regency Sav. Bank*, 799 N.Y.S.2d 29, 29 (2005); *see Bowles v. City of New York*, 545 N.Y.S.2d 799, 799 (1989) (a mere out-of-possession titleholder who "neither maintained, controlled nor reserved any rights to reenter the premises" could not be held liable in personal injury action).

Public records indicate that the Property was conveyed by Deed dated July 27, 2007 to Ramchand Deoki and Sandhya Deoki (the "Deokis"). (("Property Deed") (ECF No. 25-2).)[4] A foreclosure sale of the Property was held on May 5, 2017, at which point Relax Life Media, Inc. purchased the Property at the foreclosure sale. (*Id.*) On August 30, 2017, the transfer of the Property was completed by Deed. (*Id.*) Fannie Mae argues that on August 3, 2017, Relax Life Media was the equitable owner of the Property and the Deokis were the legal title owners of the Property. As such, Fannie Mae asserts it was an out-of-possession mortgage holder and had no duty to Plaintiff to maintain the Property.

Nonetheless, Plaintiff alleges that Fannie Mae "controlled and/or was responsible for" the Property. (ECF No. 5-1 at 4.) Further, Plaintiff alleges Fannie Mae was obligated to the maintain the Property pursuant to RPAPL § 1307. (*Id.*) While Fannie Mae offers admissible evidence that it did not hold legal or equitable title, RPAPL § 1307 permits—and in fact, obligates—Fannie Mae to maintain and exercise control over the Property under certain circumstances. Fannie Mae relies on case law that specifically shelters out-of-possession mortgage holders from liability

---

[4] A court may, without converting the motion into one for summary judgment, consider documents that are attached to, incorporated by reference in or integral to the complaint; and it may also consider matters that are subject to judicial notice. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

where they *fail to maintain, control, or exercise rights to re-enter the premises*. *Moran*, 799 N.Y.S.2d at 29; *Bowles*, 545 N.Y.S.2d at 799. However, in this case, the level of control Fannie Mae maintained over the Property is disputed. As such, the Court declines to conclude as a matter of law that Fannie Mae did not have a duty to maintain the Property. *See Gonzalez v. Demasters*, 675 N.Y.S.2d 882, 882 (1998) (refusing to dismiss a negligence claim where there were triable issues of fact as to whether a mortgagee never owned, possessed, or controlled the subject premises). Accordingly, Fannie Mae's motion for judgment on the pleadings is denied as to Plaintiff's negligence claim.

*B. Bayview*

Like Fannie Mae, Bayview argues that it never owned, maintained, or controlled the Property and therefore cannot be held liable for negligence. (ECF No. 45 at 8-9.) *See e.g., Jackson v. Fed. Home Loan Mortg. Corp.*, 1996 WL 1088201, at *2 (E.D.N.Y. 1996) ("even an 'out-of-possession titleholder' to property is not liable for personal injuries occurring on the property where the titleholder acts as a mortgagee, never maintaining, controlling, or reserving the right to reenter the premises."). Again, critical to the determination of whether liability can be imposed is whether Bayview maintains, controls, or reserves the right to reenter the premises. Plaintiff's allegation that Bayview "controlled and/or was responsible" for the Property, coupled with the potential obligations § 1308 imposes on Bayview to maintain the Property, suggest that Bayview may have maintained, controlled, or reserved the right to reenter the premises. As such, the Court declines to find as a matter of law that Bayview did not have a duty to Plaintiff to maintain the Property. Accordingly, Bayview's motion to dismiss is denied as to Plaintiff's negligence claim.

### III. Motion to Amend the Complaint

Plaintiff seeks leave to amend the Complaint to (1) add the Deokis as additional parties to the litigation, (2) clarify that the subject property was vacant and abandoned at the time of Plaintiff's accident, and (3) plead the Plaintiff is a part of a class designed to be protected by the requirements of RPAPL §§ 1307 and 1308. (ECF No. 50 at 1-2.) Plaintiff notes that this case is in the early stages of litigation; Bayview has not submitted an answer to the Complaint and no discovery has been exchanged. (*Id.* at 1.)

*A. Additional Parties*

Defendants argue that Plaintiff seeks to add the Deokis as additional parties in bad faith and allege that (1) despite Plaintiff's claims, Plaintiff did not inadvertently exclude the Deokis from this litigation, but rather Plaintiff's original counsel had a conflict of interest that precluded addition of the Deokis to the litigation, (2) Plaintiff seeks to add the Deokis to this litigation out of a desire to destroy diversity jurisdiction, and (3) Plaintiff cross-moves to add the Deokis to this litigation to prevent the Court from ruling on Defendants' meritorious motions. (ECF No. 38 at 2-3; ECF No. 35 at 5.)

The Court declines to find that Plaintiff's motion to add the Deokis is in bad faith. Plaintiff provides a good faith explanation for the addition—that he retained new counsel and he soon after filed a motion to amend. Further, Plaintiff's cross-motion does not prevent the Court from ruling on Defendants' motions and will not cause undue delay as the case is still in the early stages of litigation.

Bayview additionally argues that Plaintiff's motion is futile because the proposed Amended Complaint fails to allege that the Deokis owed a duty to Plaintiff. (ECF No. 35 at 4.) However, the proposed Amended Complaint alleges that the Deokis were a legal title owner to the Property at the time of the incident and that they were responsible for the condition of the

12

Property. (ECF No. 51-3 at 4.) Therefore, the Court finds that the proposed amendment broadly alleges a plausible negligence claim against the Deokis.

### B. Other Amendments

Plaintiff seeks to additionally plead that the subject property was vacant and abandoned at the time of Plaintiff's accident and that the Plaintiff is a part of a class designed to be protected by the requirements of RPAPL §§ 1307 and 1308. The Court will permit Plaintiff to add additional relevant pleadings regarding the vacant and abandoned state of the Property. However, Plaintiff's allegation that Plaintiff is a member "of the class of persons intended to be protected by RPAPL §[§] 1307 and 1308" is conclusory. Therefore, such an amendment is not permissible.

***

Accordingly, the Court grants Plaintiff's motion to amend the Complaint as follows: Plaintiff may add the Deokis as named Defendants and, provided such statements are made in good faith, Plaintiff may assert factual allegations that he subject property was vacant and abandoned. As the findings of this opinion, including dismissal of RPAPL §§ 1307 and 1308 claims against Defendants, have rendered portions of Plaintiff's proposed Amended Complaint moot, Plaintiff is directed to file a revised Amended Complaint consistent with this opinion.

## CONCLUSION

For the foregoing reasons, Fannie Mae's motion for judgment on the pleadings is GRANTED as to Plaintiff's RPAPL § 1307 claim and DENIED as to Plaintiff's negligence claim; Bayview's motion to dismiss is GRANTED as to Plaintiff's RPAPL §1308 claim and DENIED as to Plaintiff's negligence claim; Plaintiff's cross-motion to amend the Complaint is GRANTED to the extent of adding the proposed additional Defendants and to pleading facts that the subject property was vacant and abandoned at the time of the alleged incident and DENIED as to Plaintiff's motion to plead Plaintiff's alleged status within the class of persons intended to

be protected by RPAPL §§ 1307 and 1308. Plaintiff is directed to file an Amended Complaint consistent with the opinion on or before April 16, 2021. In the event Plaintiff fails to timely file an Amended Complaint, the original Complaint will be deemed operative. In the event Plaintiff files an Amended Complaint, Plaintiff is reminded that any newly named Defendant must be timely served pursuant to statute. Defendants are directed to file an Answer on or before May 10, 2021.

      The Clerk of the Court is directed to terminate the motions at ECF Nos. 22, 44, and 47.

Dated:   March 19, 2021                                         SO ORDERED:

           White Plains, New York

                                                                NELSON S. ROMÁN

                                                               United States District Judge